UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CAROLYN E. TURNER,

            Plaintiff,            CIV. S-04-1825 FCD PAN

    v.

JO ANNE B. BARNHART,            Findings and Recommendation
Commissioner of Social
Security,

            Defendants.

-o0o-

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq.

Both parties moved for judgment on the record.

////

The social security disability insurance program established by Title II of the Social Security Act pays cash benefits to disabled persons who have contributed to the program and retain "insured" status. 42 U.S.C. §§ 423(a)(1)(D), 416(i)(2)(C), 416(I)(3). The supplemental security income program established by Title XVI of the Act provides benefits to disabled persons without substantial resources and little income. 42 U.S.C. § 1383.

To qualify, a claimant must establish inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner makes this assessment by a five-step analysis. First, the claimant must not currently be working. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the

claimant can do his past work benefits are denied.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Fifth, if the claimant cannot do his past work and, considering the claimant's age, education, work experience, and residual functional capacity, cannot do other work that exists in the national economy, benefits are awarded.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The last two steps of the analysis are required by statute.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Plaintiff applied for benefits in April 2001, at age 24 years, claiming disability since March 2001 due to "major recurrent depression, PTSD, dyslexia, ADD-learning disability."  Tr. 63, 67.  Plaintiff's claim was denied initially and upon reconsideration by the Social Security Administration.

In September 2002, after a hearing in August, an administrative law judge found that: plaintiff is insured through December 2001; plaintiff has not engaged in substantial activity since March 5, 2001; plaintiff has post-traumatic stress disorder and depression, but does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4; plaintiff cannot perform her past work, plaintiff has a high school education and has completed two years of college work; plaintiff has no exertional limitations; she retains the capacity for unskilled work with limited public contact free of significant stress; and is not disabled.  Tr. 27-28.

////

1  This action follows the Appeals Council's June 2004 denial
2 of plaintiff's request for review.  Tr. 3-5.
3  This court must uphold the Commissioner's determination that
4 a plaintiff is not disabled if the Commissioner applied the
5 proper legal standards and if the Commissioner's findings are
6 supported by substantial evidence.  <u>Orteza v. Shalala</u>, 50 F.3d
7 748 (9th Cir. 1995).  Substantial evidence is more than a mere
8 scintilla but less than a preponderance; it means such relevant
9 evidence as a reasonable mind might accept as adequate to support
10 a conclusion.  <u>Id</u>.
11  Plaintiff claims the administrative law judge ("ALJ") erred
12 by: (1) failing to accord the proper weight to plaintiff's
13 treating physician, Dr. Paul; (2) finding plaintiff not fully
14 credible; (3) improperly assessing plaintiff's residual
15 functional capacity; and (4) failing to obtain the testimony of a
16 vocational expert.
17  It is not disputed that plaintiff suffers only mental
18 limitations; the issue is the scope and effect of those
19 limitations upon her capacity to perform gainful, unskilled work
20 considering she was 24 years of age at the time of the decision
21 and had completed two years of college work.
22  The basic mental demands of competitive, remunerative,
23 unskilled work include the ability on a sustained basis to
24 understand, carry out, and remember simple instructions, to
25 respond appropriately to supervision, co-workers, and usual work
26 situations; and to deal with changes in a routine work setting.

4

Dr. Richwerger's opinion as to plaintiff's ability to concentrate contradicted that stated in Dr. Paul's March 2002 assessment.  However, Dr. Richwerger's opinion was based on independent tests he conducted while examining plaintiff. Furthermore, the ALJ found that Dr. Paul's conclusory assessment was not completely consistent with the medical records and not supported by clinical findings.  Accordingly, the ALJ did not err in according it "no weight" and relying instead on Dr. Richwerger's opinion.

In March 2002, plaintiff's treating physician, Dr. Paul, reported that plaintiff's ability to follow work rules, interact with supervisors, and maintain personal appearance was "good," that her ability to relate to co-workers, deal with the public, function independently, understand, remember and carry out simple job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability was "fair," but that plaintiff's ability to use judgment, deal with work stresses, and maintain attention and concentration was "poor."  Tr. 255-57.

The material difference of opinion relates to plaintiff's capacity to concentrate sufficiently to perform simple repetitive tasks.  Dr. Richwerger found plaintiff had only mild difficulty in attention and concentration and would have no difficulty in performing simple repetitive tasks.  Dr. Paul effectively found that plaintiff could understand, remember and carry out simple job instructions that did not require much concentration.

5

1    Plaintiff argues that the ALJ erred by according "no weight"
2 to Dr. Paul's opinion but, in fact, this is not entirely true
3 inasmuch as the ALJ adopted Dr. Paul's opinion that plaintiff
4 could not deal with work stresses and fairly resolved the tension
5 between the two medical opinions (which in fact presented no
6 patent contradictions).  But should it be thought that the ALJ
7 truly rejected Dr. Paul's opinion, he was on firm ground.
8    As a general rule, more weight is given to a treating
9 physician's opinion because "he is employed to cure and has a
10 greater opportunity to know and observe the patient as an
11 individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.
12 1987).  However, where the opinion of a treating physician is
13 contradicted by a non-treating physician's opinion, the latter
14 may constitute substantial evidence if it rests on independent
15 clinical findings. Magallanes v. Bowen, 881 F. 2d 747, 751 (9th
16 Cir. 1989).  Where, on the other hand, a nontreating source's
17 opinion contradicts that of the treating physician but is not
18 based on independent clinical findings, or rests on clinical
19 findings also considered by the treating physician, the opinion
20 of the treating physician may be rejected only if the ALJ gives
21 specific, legitimate reasons for doing so that are based on
22 substantial evidence in the record. Andrews v. Shalala, 53 F.3d
23 1035, 1041 (9th Cir. 1995)(citations omitted).  However, a
24 statement by any physician that the claimant is disabled or
25 unable to work is a conclusion on the ultimate issue to be
26 decided and is not binding on the ALJ in reaching his

6

determination as to whether the claimant is disabled within the meaning of the Act. Murray v. Heckler, 722 F.2d 499 (9th Cir. 1983)(citing Burkhart v. Bowen, 856 F.2d 1335 (9th Cir. 1988); 20 C.F.R. §§ 404.1527 and 404.927). It is well established that the ALJ need not accept a treating physician's opinion which is brief and conclusionary in form with little in the way of clinical findings to support the conclusion. Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986). Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

The March 2002 assessment by Dr. Paul is conclusory in that it is unsupported by clinical findings. As the ALJ notes, the record does not indicate that Dr. Paul spoke with plaintiff about work stress or that he conducted any independent tests relating to plaintiff's capacity for concentration and attention span. Tr. 23. In reviewing this assessment, the ALJ further noted that Dr. Paul's progress notes show that the "claimant's symptoms have remained fairly stable with medications with only occasional increases in symptoms which usually abate immediately (except on the two occasions in which the claimant has been hospitalized for brief periods)." Tr. 23. Dr. Richwerger, on the other hand, conducted multiple tests when he examined plaintiff in June 2001 and Dr. Paul did not consider the results. On such evidence, the ALJ was entitled to resolve conflicts in favor of Dr. Richwerger.

Next, plaintiff claims the ALJ erred by finding plaintiff's subjective complaints not fully credible.

////

"Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing.  If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999) (citations and internal quotations omitted).

In this case, the ALJ found the claimant's testimony and the statements of other third parties suggested greater limitations than shown by the objective medical evidence.  Tr. 24.  Specifically, the ALJ found the medical evidence indicates plaintiff remains capable of performing some work and is not completely disabled as required under the regulations.  Tr. 24.  Further, he did not find credible plaintiff's allegation that she is not able to perform all work as a result of symptoms from depression and posttraumatic stress disorder."  Tr. 24.

In support of these conclusions, the ALJ pointed to plaintiff's daily activities, including her ability to live on her own, to perform her own housework,to shop, cook and care for her own financial affairs, which the ALJ concluded indicated an ability to perform simple unskilled work.  Tr. 24.  The ALJ also noted that:

////

>while the claimant alleges she is unable to work, she was vague when questioned by one examiner as to why she cannot work. She also testified at the hearing that she is no longer taking medications for her symptoms. This indicates the claimant's symptoms may not be as limiting as she alleges. Although the record documents that she has consistently sought treatment for her disorder, as noted, the treating records indicate that with treatment, the claimant's symptoms have stabilized and the undersigned notes the claimant's reports of her symptoms to her treating source are not consistent with her testimony at the hearing. While treating records show the claimant has consistently complained of sleeping and difficulty with appetite, they do not show chronic complaints of difficulty with concentration or memory and/or such severe limitations in the claimant's social abilities.

Tr. 24-25.

The ALJ's analysis takes into account plaintiff's daily activities, inconsistencies between her medical records and her testimony, the fact that she was unable to articulate the reasons for her inability to work when questioned by an examiner, and that, despite evidence in the record showing plaintiff's generally positive response to medication, that she has ceased to take it. The ALJ's ultimate finding that plaintiff's allegations are not fully credible is clear and convincing and supported by substantial evidence in the record.

Next, plaintiff argues the ALJ did not accurately assess plaintiff's residual function capacity. Plaintiff argues that because the ALJ did not accurately assess plaintiff's credibility, the entirety of plaintiff's subjective complaints were erroneously excluded from the residual functional capacity assessment. Plaintiff also argues that because Dr. Paul's March 2002 assessment was erroneously excluded, plaintiff's RFC

9

assessment was not based on "all relevant evidence" nor "supported by substantial evidence of the record as a whole."

Because, as discussed above, the ALJ did not err in rejecting Dr. Paul's opinion nor in finding plaintiff less than credible, plaintiff's argument dissolves.

Finally, plaintiff claims the ALJ erred by failing to obtain the testimony of a vocational expert. Plaintiff asserts the testimony of a vocational expert was required to determine the extent to which the unskilled job base was eroded by plaintiff's non-exertional limitations.

In determining, at step five, whether a claimant can perform substantial gainful activity, the administrative law judge is guided by the following principles:

> Once a claimant establishes a prima facie case of disability by demonstrating the claimant cannot return to his or her former employment, the burden then shifts to the [Commissioner] to show that the claimant can perform other types of work in the national economy, given the claimant's age, education, and work experience. The [Commissioner] can satisfy this burden by either (1) applying the Medical-Vocational Guidelines ("grids") in appropriate circumstances or (2) taking the testimony of a vocational expert.

Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988) (citations omitted).

The grids may be used if a claimant has both exertional and non-exertional limitations, so long as the non-exertional limitations do not significantly impact the exertional capabilities. Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds; Bunnell v. Sullivan, 947 F.2d

341 (9th Cir. 1991)(en banc).  The ALJ, however, is not automatically required to deviate from the grids whenever plaintiff alleges a non-exertional limitation.  Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999)(quoting Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 577 (Pregerson, J., concurring)(9th Cir. 1988)).  "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines.  In such a case, the guidelines would be inapplicable."  Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999)(quoting Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 577 (Pregerson, J., concurring)(9th Cir. 1988)).

According to SSR 85-15, when a claimant has no exertional limitations, the ALJ must determine how much the claimant's occupational base--the entire exertional span from sedentary work through heavy--is reduced by the effects of the non-exertional impairments.  See SSR 85-15.  The ALJ is permitted, but not always required, to consult a vocational resource to make this determination.  Id.

SSR 85-15 further provides:

> When a person's impairment is only mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work.  The basic mental demands of competitive, remunerative, unskilled work include the abilities on a (sustained basis) to understand, carry out, and remember simple instructions, to respond appropriately to supervision, coworkers, and usual work situations; and to deal with

11

> changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

SSR 85-15.

Having found plaintiff capable of the exertional requirements of a full range of unskilled work, the ALJ consulted a medical vocational decision guide showing available unskilled jobs the plaintiff could do such as table worker, lens block gager, housekeeper, auto body repair helper, airport maintenance laborer, blending-tank helper and hospital cleaner. Tr. 26. (Plaintiff does not challenge the accuracy of the vocational guide.) He commented that all of these jobs "appear to be performed in a low stress environment" and found that "there are a significant number of jobs which the claimant can perform given her restrictions." Tr. 26. The ALJ went on to find that:

> within the framework of the vocational guidelines, a finding of 'not disabled' remains appropriate. As noted, the claimant has no physical limitations, therefore she remains capable of performing heavy, medium, light and sedentary work. Although the number of jobs available would be restricted due to a determination that the claimant is limited to unskilled work in a low stress environment with limited public contact, the undersigned notes that at the medium level, there are approximately 2,500 separate medium, light and sedentary jobs, each occupation representing numerous unskilled jobs which do not require skills or previous experience and which can be performed after a short demonstration or within 30 days.

Tr. 26.

The ALJ then concluded that plaintiff's non-exertional limitations were not sufficiently severe to significantly

compromise her ability to do unskilled work.  The ALJ included plaintiff's non-exertional limitations in his RFC assessment, as required.  SSR 85-15.  The ALJ's reference to the medical vocational decision guide to assess the number of unskilled jobs was in accordance with SSR 85-15, as was his use of the grids as a framework to determine that plaintiff was not disabled.

   For the foregoing reasons, I recommend that plaintiff's motion for summary judgment be denied and defendant's motion for summary judgment be granted.

   Dated:  November 30, 2005.

                               /s/ Peter A. Nowinski
                               PETER A. NOWINSKI
                               Magistrate Judge